**NUCLEAR REGULATORY COMMISSION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Treasury Employees Union, Intervenor.**

No. 87–3182.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1989.

Decided July 14, 1989.

default, where that would presumably result in upholding by default the agency's allegation of nonnegotiability.

Robert Kenneth Rasmussen (William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Sol., Mary K. Hembree, Office of the Gen. Counsel, U.S. Nuclear Regulatory Com'n, Dennis C. Dambly, Deputy Asst. Gen. Counsel for Admin., Marvin L. Itzkowitz, Sr. Counsel for Labor and Personnel, on brief), for petitioner.

William Eugene Persina, Deputy Sol. (Ruth E. Peters, Sol., Jill A. Griffin, Federal Labor Relations Authority, on brief), for respondent.

Gregory O'Duden, Deputy Director of Litigation (Lois G. Williams, Director of Litigation, Nat. Treasury Employees Union, on brief), for Intervenor.

Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting en banc.*

WILKINSON, Circuit Judge:

The Nuclear Regulatory Commission (NRC) petitions for review of an order of the Federal Labor Relations Authority (FLRA) directing the NRC to bargain in good faith over a salary proposal advanced during collective bargaining by the National Treasury Employees Union. *See National Treasury Employees Union & Nuclear Regulatory Comm'n*, 29 FLRA (No. 19) 217 (September 29, 1987). The FLRA cross-petitioned for enforcement of its order and this court granted the union's motion for leave to intervene in these proceedings. We hold that the NRC is not obligated to bargain over the union's salary proposal and therefore grant the NRC's petition for review. The FLRA's decision is reversed and enforcement of its bargaining order is denied.

I.

A.

Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–7135, recognizes the right of federal employees to belong to unions and establishes a collective bargaining system for the federal sector. Although Title VII provides for employee and union participation in the public sector, it is not simply an "employees' rights statute." *United States Department of Health & Human Services v. FLRA*, 844 F.2d 1087, 1089 (4th Cir.1988). Rather, Congress expressly recognized in Title VII "the special requirements and needs of the Government," and sought to balance these interests against the rights of employees to participate in labor organizations. *See* 5 U.S.C. § 7101(b). Public sector labor relations differ therefore in important respects from those of the private sector. *See* 124 Cong. Rec. S14,281 (daily ed. Aug. 24, 1978) (remarks of Sen. Sasser), *reprinted in Subcommittee on Postal Personnel and Modernization of the House Committee on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Federal Service Labor–Management Relations Statute, Title VII of the Civil Service Reform Act of 1978*, 1014 (1979) [hereinafter *Legislative History*]. While salaries and benefits are often the central subject of private-sector collective bargaining, most wages in the public sector are set by statute. Also, unlike private-sector bar-

* Judge Winter did not participate in the decision in this case.

gaining, many matters in the public sector are not negotiable because agencies and unions are not free to contravene standards which have been enacted into law.

In general, Title VII obligates federal employers and employee unions to engage in collective bargaining over "conditions of employment." *See* 5 U.S.C. §§ 7114(a)(4), 7103(a)(12) & 7103(a)(14). The duty to bargain does not extend, however, to contract proposals which are "inconsistent with any Federal law or any Government-wide rule or regulation," 5 U.S.C. § 7117(a)(1), or which interfere with certain prerogatives reserved by statute to agency management. *See* 5 U.S.C. § 7106. Federal agencies and employee organizations must make good faith efforts to reach agreement on conditions of employment not excluded from the bargaining process. *See* 5 U.S.C. § 7114(a)(4). But, again unlike private-sector bargaining, the public sector provides a mechanism that can compel the adoption of a negotiable proposal. If the parties fail to agree on a negotiable contract proposal, Title VII provides for third-party resolution of the dispute. *See* 5 U.S.C. §§ 7119(b), 7119(c)(5)(B) & 7119(c)(5)(C). Title VII's duty to bargain over a contract proposal subjects the agency to the possibility that the Federal Service Impasses Panel will resolve the dispute by imposing a binding proposal upon the agency. *See* 5 U.S.C. §§ 7119(b), 7119(c)(5)(B) & 7119(c)(5)(C).

### B.

The Nuclear Regulatory Commission administers the Atomic Energy Act of 1954, *see* 42 U.S.C. §§ 2011 *et seq.*, and is charged with overseeing the development, utilization, and control of nuclear technology so as to promote the general welfare and security of the United States. *See* 42 U.S.C. §§ 2011–2013 & 2201. The National Treasury Employees Union is the exclusive representative of a bargaining unit comprising all professional, nonprofessional, and wage-earning employees of the NRC, with the exception of managers, supervisors, or "confidential employees" as defined in 5 U.S.C. § 7103(a)(13).

In October of 1984, during the course of collective bargaining, the union submitted a proposal to the NRC which included a periodic cost-of-living adjustment. The proposal provided in pertinent part that:

> [t]he salary structure, that is the grade and steps of the pay schedule, being used by the NRC will be maintained. Hereafter, all employees will have their current salaries adjusted for the cost of living/comparability factor. The adjustment will be equal to the statistical adjustment recommended to the President by the [Advisory Committee on Federal Pay, *see* 5 U.S.C. § 5306]. This adjustment will become effective at the announcement of it by the [Committee] or other appropriate sources. It will be unaffected by Presidential or Congressional actions.

The NRC refused to bargain, finding the contract proposal nonnegotiable. The agency objected, *inter alia,* to the fact that the Advisory Committee's recommendations would be "unaffected by Presidential or Congressional actions," noting that the Committee frequently recommends increases well above those passed by Congress and signed by the President. The agency determined that the union's proposal would violate Title VII's "management rights clause" by affecting management decisions to determine the agency's budget. *See* 5 U.S.C. § 7106(a)(1). The NRC also believed the salary proposal to be inconsistent with the statutory requirements of the Atomic Energy Act, *see* 42 U.S.C. § 2201(d), and therefore nonnegotiable pursuant to § 7117 of Title VII.

On March 20, 1986, the union petitioned the FLRA for review of the NRC's nonnegotiability determination. The FLRA ordered the NRC to negotiate with the union, finding the salary proposal within the agency's duty to bargain. *National Treasury Employees Union & Nuclear Regulatory Comm'n,* 29 FLRA (No. 19) 217 (September 29, 1987). According to the FLRA, the union's proposal was a negotiable "condition of employment," 5 U.S.C. § 7103(a)(14), did not violate the NRC's right to determine its budget under 5 U.S.

C. § 7106, and was not "inconsistent" with any provision of the Atomic Energy Act, 42 U.S.C. § 2201(d). *See* 5 U.S.C. § 7117(a)(1). The NRC petitioned for review of the FLRA's decision. A panel of this court enforced the FLRA's bargaining order. *Nuclear Regulatory Comm'n v. FLRA,* 859 F.2d 302 (4th Cir.1988). Review by the en banc court followed.

## II.

■ Title VII of the Civil Service Reform Act grants federal employees the right to negotiate over "conditions of employment." 5 U.S.C. § 7102(2). *See also* 5 U.S.C. §§ 7101(a)(1)(C) & 7114(a)(4). The NRC asserts that the statutory term "conditions of employment" does not include compensation. We agree. Title VII does not authorize labor organizations and federal agencies to negotiate over employee pay.[1]

"Conditions of employment" are defined in Title VII as those:

> personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions, except that such term does not include policies, practices, and matters—
>
> (A) relating to political activities prohibited under subchapter III of chapter 73 of this title;
>
> (B) relating to the classification of any position; or
>
> (C) to the extent such matters are specifically provided for by Federal statute....

5 U.S.C. § 7103(a)(14). As with any case of statutory interpretation, "our analysis must begin with the language of the statute itself." *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). A plain reading of the text indicates that Congress did not include employee pay within the statutory definition of bargainable matters. There is no evidence in the statutory text that Congress intended for federal agencies and employee unions to negotiate over employee compensation where such compensation is not set by statute. No statutory reference to compensation exists, nor is any language used that would suggest compensation, such as "terms" of employment.

The FLRA argues, however, that "[t]here is no express exclusion of wages and fringe benefits" from the definition of bargainable matters under the statute. This view stands the inquiry on its head and presupposes that wages are a bargainable item in the first place. It is for Congress to affirmatively denominate a subject as one for collective bargaining. Statutory text is a more reliable guide for judicial interpretation than is statutory silence. In the absence of an affirmative congressional expression, we refuse to expand the scope of bargaining by implication to include employee compensation. Such an important matter as bargaining over wages should not be left to vague intimation or oblique reference.

No intent to permit general public-sector wage bargaining is evident in the language, structure, or legislative history of Title VII. As to language, Title VII's definition of "conditions of employment" must be read against the background of other collective bargaining schemes such as the National Labor Relations Act (NLRA). *See* 29 U.S.C. §§ 151 *et seq.* Significantly, the scope of collective bargaining under the NLRA extends to "wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). Congress was fully cognizant of the NLRA when Title VII was enacted, *see* H.R.Rep. No. 95–1403, 95th Cong., 2d Sess. 41–42 & 50 (1978), *reprint-*

---

1. The Third, Sixth, and District of Columbia Circuits also have concluded that Congress did not intend to subject the pay of federal employees to collective bargaining under Title VII of the Civil Service Reform Act. *See Department of the Navy, Military Sealift Command v. FLRA,* 836 F.2d 1409 (3d Cir.1988); *Fort Knox Dependent Schools v. FLRA,* 875 F.2d 1179 (6th Cir. 1989); *Department of the Treasury, Bureau of Engraving & Printing v. FLRA,* 838 F.2d 1341 (D.C.Cir.1988). *See also Department of Defense Dependents Schools v. FLRA,* 863 F.2d 988 (D.C. Cir.1988) (vacated for rehearing en banc). *But see Fort Stewart Schools v. FLRA,* 860 F.2d 396 (11th Cir.1988); *West Point Elementary School Teachers Ass'n v. FLRA,* 855 F.2d 936 (2d Cir. 1988).

ed in Legislative History at 687–88 & 696; S.Rep. No. 95–969, 95th Cong., 2d Sess. 97 & 106, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2819 & 2828, *and in Legislative History* at 757 & 766, and its use of the term "conditions of employment" rather than the NLRA's broader definition implies a "narrower range of bargainable matters" under Title VII than under the NLRA. *Department of the Navy, Military Sealift Command v. FLRA*, 836 F.2d 1409, 1416 n. 14 (3d Cir. 1988). *But see Fort Stewart Schools v. FLRA*, 860 F.2d 396, 400 (11th Cir.1988). "In common parlance, the conditions of a person's employment are most obviously the various physical dimensions of his working environment," *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 222, 85 S.Ct. 398, 409, 13 L.Ed.2d 233 (1964) (Stewart, J., concurring); a definition which does not include employee pay. Indeed, we are unaware of any other collective bargaining statute which equates "conditions of employment" with employee compensation. *See, e.g.,* 20 U.S.C. § 902(a) (Overseas Pay Act) (distinguishing between "the payment of compensation" and "conditions of employment").

This interpretation of Title VII is supported by the structure of the Civil Service Reform Act. Section 704 of the Act, for example, preserves the collective bargaining rights of those "prevailing rate employees" who negotiated over pay prior to August 19, 1972. *See* Pub.L. No. 95–454, § 704, 92 Stat. 1111, 1218 (1978), *reprinted at* 5 U.S.C. § 5343 note. *See generally* 5 U.S.C. §§ 5342 *et seq.* (Prevailing Rate Act of 1972). Section 704(a) of the provision refers to "terms and conditions of employment and other employment benefits"; subsection (b) refers to the "pay and pay practices" of prevailing rate employees. *See* Pub.L. No. 95–454, § 704, 92 Stat. 1111, 1218 (1978), *reprinted at* 5 U.S.C. § 5343 note. Congress therefore knows how to grant federal employees the express right to bargain collectively over their pay when it wishes to do so. *See also* Pub.L. No. 92–392, § 9(b), 86 Stat. 564, 574 *reprinted at* 5 U.S.C. § 5343 note (Prevailing Rate Act of 1972) (referring to "wages,

the terms and conditions of employment, and other employment benefits"); Publ.L. No. 91–375, § 10(a), 84 Stat. 719, 784 (1970), *reprinted at* 39 U.S.C. § 1201 note (Postal Reorganization Act) (requiring the Postmaster General and labor organizations to bargain over "wages, hours, and working conditions"). Congress' distinction in § 704 between "pay and pay practices" and "terms and conditions of employment and other employment benefits" is thus an indication of its intent that the statutory term "conditions of employment" does not include employee compensation. *See Sealift,* 836 F.2d at 1420.

We agree with the Third Circuit that the Act's legislative history is also "replete" with indications that Congress did not intend to subject employee compensation to collective bargaining. *Id.* at 1416. As originally proposed in the House of Representatives, the public sector labor relations program required federal agencies and employee organizations to "bargain in a good-faith effort to reach agreement with respect to the terms *and* conditions of employment." H.R. 9094, 95th Cong., 1st Sess. (1977) (emphasis added), *reprinted in Legislative History* at 243. "Conditions of employment" expressly included "pay practices." *Id.* at 244. During committee markup of the bill, Representative Heftel of Hawaii introduced an amendment which also defined the scope of bargaining to include "pay practices." *Legislative History* at 1087–88. When the bill was reported out of committee, however, the scope of the bargaining obligation had been significantly narrowed. As reported and enacted, the duty to bargain extended only to "conditions of employment," and did not expressly include employee compensation. Pub.L. No. 95–454, § 7103, 92 Stat. 1111, 1194 (1978), *codified at* 5 U.S.C. §§ 7103(a)(12) & 7103(a)(14). "Few principles of statutory interpretation are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *Immigration & Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 442–43, 107 S.Ct. 1207, 1219,

94 L.Ed.2d 434 (1987) (citation omitted). We therefore refuse to imply a bargaining obligation specifically rejected by Congress.

Moreover, the House Committee on Post Office and Civil Service, to which the bill was referred, stated in its report that the public sector labor relations program "does not authorize collective bargaining on substantive issues of pay and fringe benefits." H.R.Rep. No. 95–1403, 95th Cong., 2d Sess. 5 (1978), *reprinted in Legislative History* at 681. In supplemental views to the House Report, several committee members stated that "[t]hose of our colleagues who are concerned that this bill will significantly expand the collective bargaining rights of Federal employees need not worry. It does not." H.R.Rep. No. 95–1403, 95th Cong., 2d Sess. 377 (1978), *reprinted in Legislative History* at 721. The authors of these supplemental views were expressing their disappointment that the scope of bargaining was narrowly defined in the committee bill and excluded "pay and major money-related fringe benefits from the bargaining table." H.R.Rep. No. 95–1403, 95th Cong., 2d Sess. 378 (1978), *reprinted in Legislative History* at 722. Similarly, the Senate Committee on Governmental Affairs recognized that Title VII excluded bargaining on "economic matters." S.Rep. No. 95–969, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Admin. News 2723, 2735, *and in Legislative History* at 750.

Furthermore, Representative Clay of Missouri, a member of the Committee on Post Office and Civil Service, assured his colleagues that there was "nothing in this bill which allows Federal employees the right ... to negotiate over pay and money-related fringe benefits." 124 Cong. Rec. H8,466 (daily ed. Aug. 11, 1978), *reprinted in Legislative History* at 853. *See also* 124 Cong. Rec. E4,510 (daily ed. Aug. 10, 1978) (remarks of Rep. Clay) (the committee markup bill contained "no provision for the negotiation of pay and other money related fringe benefits"), *reprinted in Legislative History* at 845; 124 Cong. Rec. E4,293 (daily ed. Aug. 3, 1978) (remarks of Rep. Clay) ("employees still ... cannot bargain over pay"), *reprinted in Legislative History* at 839. Representative Derwinski of Illinois remarked that wages "would remain beyond the scope of collective bargaining." 124 Cong. Rec. H9,639 (daily ed. Sept. 13, 1978), *reprinted in Legislative History* at 935. *See also* 124 Cong. Rec. H9,669 (daily ed. Sept. 13, 1978) (remarks of Rep. Fisher of Virginia) (the bill "does not contain such controversial features as the right to ... bargain for pay and benefits"), *reprinted in Legislative History* at 964. Likewise, Senator Sasser of Tennessee, a member of the Committee on Governmental Affairs, recognized that under the proposed legislation federal employees "may not bargain over pay or fringe benefits." 124 Cong. Rec. S14,281 (daily ed. Aug. 24, 1978), *reprinted in Legislative History* at 1014.

■ Significantly, Representative Udall of Arizona, who sponsored the amended version of Title VII which Congress ultimately enacted into law, stated that "[t]here is not really any argument in this bill or in this title about Federal collective bargaining for wages and fringe benefits and retirement.... All these major regulations about wages and hours and retirement and benefits will continue to be established by law through Congressional action." 124 Cong. Rec. H9,633 (daily ed. Sept. 13, 1978), *reprinted in Legislative History* at 923. His remarks, as those of the amendment's sponsor, are an "authoritative guide" to its construction, *North Haven Bd. of Education v. Bell*, 456 U.S. 512, 526–27, 102 S.Ct. 1912, 1921, 72 L.Ed. 2d 299 (1982), and illustrate that Title VII does "not permit bargaining over pay and fringe benefits." 124 Cong. Rec. H8,462 (daily ed. Aug. 11, 1978) (remarks of Rep. Udall), *reprinted in Legislative History* at 850. *See generally Sealift*, 836 F.2d at 1417–19.

While the Authority contends that the legislative history is "ambiguous," we think it could not be more clear. The legislative history of the Act indicates that the term "conditions of employment" does not include employee compensation and that

employee compensation therefore falls outside Title VII's duty to bargain.

■ We recognize, of course, that the FLRA is entitled to deference when applying the provisions of the Civil Service Reform Act, *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), but we must determine whether the agency's interpretation of the statute comports with congressional intent. *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 & n. 9, 104 S.Ct. 2778, 2781–82 & n. 9, 81 L.Ed.2d 694 (1984). *See also* 5 U.S.C. § 706 ("reviewing court shall decide all relevant questions of law [and] interpret constitutional and statutory provisions"). Congress' intent "is the law and must be given effect." *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9. Here, the relevant statutory provisions of the Act must therefore "get their final meaning from judicial construction." *See Federal Trade Commission v. Colgate–Palmolive Co.*, 380 U.S. 374, 385, 85 S.Ct. 1035, 1043, 13 L.Ed.2d 904 (1965), *citing Federal Trade Commission v. R.F. Keppel & Bro., Inc.*, 291 U.S. 304, 314, 54 S.Ct. 423, 427, 78 L.Ed. 814 (1934). In this regard, it would be reckless for a federal court to impute to Congress an unexpressed intention to allow others to reorder the priorities and limitations placed upon federal agencies by Congress itself. Historically, Congress and the Chief Executive have borne primary responsibility for the federal budgetary process. To follow the interpretation of the FLRA in this instance is to effect a judicial withdrawal of political accountability in public-sector compensation that substitutes for the competitive pressures constraining private-sector collective bargaining.

We believe the FLRA has misconstrued Title VII and undermined Congress' intent by ordering the NRC to bargain over employee wages and salaries. Employee compensation is nonnegotiable in the absence of express congressional authorization to the contrary.

### III.

■ Regardless of whether employee compensation is within the scope of Title VII's bargaining obligation, the NRC contends that it cannot be required to negotiate over the union's salary proposal. The NRC asserts that such a duty to bargain would interfere with the agency's right to determine its own budget under Title VII's management rights clause, *see* 5 U.S.C. § 7106(a)(1), and would be inconsistent with § 161(d) of the Atomic Energy Act. *See* 42 U.S.C. § 2201(d). These contentions present persuasive alternative grounds for denying enforcement of the FLRA order.

Our concurring brother believes that it is unnecessary to reach these alternative grounds of decision. We, however, believe that it is proper to address them because both the FLRA and the panel opinion relied upon them and because they were briefed and argued at length before this court.

### A.

The undeniable aim of Congress to prescribe in Title VII the rights of federal employees was not meant to come at the expense of an "effective and efficient Government." 5 U.S.C. § 7101(b). Congress therefore used broad and emphatic language in § 7106 in an attempt to strengthen the management power of federal agencies. *See Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 92, 104 S.Ct. at 441; *National Treasury Employees Union v. FLRA*, 691 F.2d 553, 560 (D.C. Cir.1982). Title VII included a "broad statement of management rights," H.R. Rep. No. 95–1403, 95th Cong., 2d Sess. 12 (1978), *reprinted in Legislative History* at 682, in which Congress "specifie[d] areas for decision which are reserved to the President and heads of agencies, which are not subject to the collective bargaining process." S.Rep. No. 95–969, 95th Cong., 2d Sess. 12–13, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2734–35, *and in Legislative History* at 749–50. In addition to granting federal employees "greater rights in labor relations," 124 Cong. Rec. H8,462 (daily ed. Aug. 11, 1978) (remarks of Rep. Udall), *reprinted in Legislative*

*History* at 850, Title VII also gave management "the power to manage and the flexibility it needs." 124 Cong. Rec. H9,633 (daily ed. Sept. 13, 1978) (remarks of Rep. Udall), *reprinted in Legislative History* at 923.

With certain exceptions not relevant here, an agency therefore "may not bargain away" its authority to make decisions in those areas specified in § 7106(a)(1), including its authority to determine the agency's budget. *See* H.R.Rep. No. 95–1403, 95th Cong., 2d Sess. 43 (1978), *reprinted in Legislative History* at 689. Although Title VII imposes a broad duty to bargain, it also demarcates an area of management prerogative which Congress protected in order "to preserve the Federal Government's ability to operate in an effective and efficient manner." *National Treasury Employees Union*, 691 F.2d at 560. Congress expressly recognized the paramount importance of an agency's right to determine its budget, 5 U.S.C. § 7106(a)(1), and designated it a matter on which an agency and an employee organization "may not negotiate under any circumstances." H.Conf.Rep. No. 95–1717, 95th Cong., 2d Sess. 153, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2887, *and in Legislative History* at 821. *See also* 124 Cong. Rec. S14,271 (daily ed. Aug. 24, 1978) (remarks of Sen. Percy), *reprinted in Legislative History* at 1012 (agency budgets are "specifically excluded from the scope of bargaining"). The management rights clause provides that "nothing in this chapter shall affect the authority of any management official of any agency" to exercise certain management prerogatives, including the authority to determine the agency's budget. 5 U.S.C. § 7106(a)(1). Because the union's salary proposal would interfere with this prerogative, it is perforce nonnegotiable.

Here, the FLRA contends that the union's salary proposal does not violate the management rights clause because the proposal does not prescribe a specific dollar amount to be allocated in the NRC's budget. According to the FLRA, the union's proposal "merely establishes a formula for adjusting [employee] salaries" and is therefore within the NRC's duty to bargain.

We reject this argument. Although the union's salary proposal does not prescribe a specific dollar amount, it does provide a formula which ultimately will dictate a specific dollar amount to be allocated in the NRC's budget each time the Advisory Committee on Federal pay recommends a cost-of-living adjustment to Congress and the President.

Moreover, if the union's salary proposal becomes part of the collective bargaining agreement, it will divest the NRC of budget-making authority and transfer that authority to the Advisory Committee on Federal Pay. The union's salary proposal would thus clearly "affect" the NRC's authority to determine its own budget and is therefore nonnegotiable. *See* 5 U.S.C. § 7106(a)(1). Specifically, the NRC would be obligated to negotiate in good faith over the union's salary proposal if it is a subject of mandatory bargaining. Title VII provides for binding resolution of contract disputes and the proposal may well become a provision of the collective bargaining agreement over the agency's objection. *See* 5 U.S.C. §§ 7119(b), 7119(c)(5)(B) & 7119(c)(5)(C). As such, the NRC would be obligated to adjust its employees' wages and salaries each time the Advisory Committee on Federal pay recommends a general increase in federal salaries. Significantly, such salary adjustments would not be subject either to the views of the agency or the actions of Congress because, by its terms, the proposal's automatic salary adjustments would be "unaffected by Presidential or Congressional actions."

This result would significantly affect the NRC's operations. Salaries, and benefits based upon those salaries, constitute more than forty percent of the NRC's annual budget. The union's proposal would vest a third-party with absolute authority to determine salary increases and would require the NRC to somehow absorb unfunded millions of dollars in salary adjustments. While the FLRA contends that the agency has failed to demonstrate that the anticipated increase in costs is significant and not offset by compensating benefits, nothing in the statute requires that this showing be

made to the satisfaction of the FLRA. As applied to employee compensation, the FLRA's test makes itself, not the agency, the arbiter of the agency's budget. Congress, however, has vested the NRC with the responsibility of balancing employee compensation against the agency's other goals. Congress did not vest this authority either in the FLRA or the Advisory Committee on Federal Pay. Title VII of the Act is quite specific: *"nothing* in this chapter shall *affect"* an agency's authority to make budget determinations. 5 U.S.C. § 7106(a)(1) (emphasis added). The union's salary proposal would divest the NRC of substantive decisionmaking authority over its budget and is therefore nonnegotiable pursuant to Title VII's management rights clause.

## B.

■ Finally, Title VII of the Act further restricts an agency's duty to bargain by precluding negotiations over contract proposals which are "inconsistent with any Federal law or any Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1). Here, the union's salary proposal conflicts with § 161(d) of the Atomic Energy Act (AEA); it is therefore nonnegotiable.

In the performance of its functions, the NRC is authorized by § 161(d) of the AEA to:

> appoint and fix the compensation of such officers and employees as may be necessary to carry out the functions of the Commission. Such officers and employees shall be appointed in accordance with the civil-service laws and their compensation fixed in accordance with [the Classification Act of 1949], except that, to the extent the Commission deems such action necessary to the discharge of its responsibilities, personnel may be employed and their compensation fixed without regard to such laws....

42 U.S.C. § 2201(d). Pursuant to this statutory provision, the NRC elected in 1975 to exempt its employees from the general requirements of the Classification Act. The FLRA contends that this election now provides the NRC with virtually unlimited discretion over the salaries and wages of NRC employees. The FLRA found that requiring the NRC to bargain over the union's salary proposal would not be inconsistent with § 161(d).

Again we disagree. Nothing in § 161(d) requires the NRC to bargain over wages or renders inapplicable those sections of the Civil Service Reform Act which define the scope of an agency's bargaining obligation. At most, § 161(d) is a limited grant of authority to the NRC designed to attract individuals whose talents and expertise would assist the agency in the performance of its mission. *See* 42 U.S.C. § 2201(d). Section 161(d) and the NRC's 1975 decision to opt out of the Classification Act scheme do not provide the agency with unfettered discretion to negotiate over employee compensation. The AEA specifically limits the NRC's discretion and the agency may deviate from the general civil service laws only "to the extent the Commission deems such action necessary to the discharge of its responsibilities." 42 U.S.C. § 2201(d). The NRC has never made the requisite determination that it is necessary to depart significantly from general government pay rates. To the contrary, the NRC's present compensation scheme closely parallels that found in the Classification Act. Nothing in the statute supports the Authority's conclusion that once the NRC decides some deviation from the Classification Act is required, that the agency thereby becomes obligated to negotiate broadly over pay schedules.

If the union's salary proposal becomes binding on the NRC, *see* 5 U.S.C. §§ 7119(b), 7119(c)(5)(B) & 7119(c)(5)(C), the agency may be required to compensate its employees at levels above which it believes are necessary to the discharge of its duties. The agency's implementation of its statutory obligations would in fact be significantly restricted, for the salary proposal would vest in the Advisory Committee on Federal Pay the agency's right to determine whether wage costs are justified by corresponding benefits. Thus, under the FLRA's interpretation of § 161(d), what Congress intended as a provision to grant the NRC marginally greater discretion

would actually leave the agency with less discretion in the exercise of its responsibilities. Such a result would be contrary to a plain reading of § 161(d), *see* 42 U.S.C. § 2201(d), and Title VII of the Act expressly excludes matters from collective bargaining which are inconsistent with federal law. *See* 5 U.S.C. § 7117(a).

In reviewing the NRC's enabling act, we are not bound by the FLRA's construction of the statute. *See Department of the Treasury, Bureau of Engraving & Printing v. FLRA,* 838 F.2d 1341, 1342 n. * (D.C.Cir.1988). We may engage in *de novo* review of the FLRA's interpretation of another agency's enabling act, and, in this case, we defer to the NRC's "permissible construction" of the AEA. *See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. According to the NRC, it may not depart from general government pay rates until it determines that such a departure is necessary to the discharge of its responsibilities. No such determination has been made here and the union's salary proposal is therefore nonnegotiable.

### IV.

In sum, we hold that employee compensation is not a "condition of employment" as defined by Congress in 5 U.S.C. § 7103(a)(14). Moreover, the union's salary proposal is "inconsistent" with federal law, *see* 42 U.S.C. § 2201(d), interferes with the NRC's authority to determine its budget, and is therefore nonnegotiable. *See* 5 U.S.C. §§ 7106(a)(1) & 7117(a)(1). We grant the NRC's petition for review, reverse the decision of the FLRA, and deny enforcement of the FLRA's bargaining order.

ENFORCEMENT DENIED.

K.K. HALL, Circuit Judge, concurring:

Judge Wilkinson has demonstrated persuasively in Sections I and II of his opinion that absent an express congressional mandate to the contrary, matters of employee compensation are not, and were never intended to be, negotiable under the Civil Service Reform Act. Accordingly, I join in these portions of the opinion and concur in

the denial of enforcement of the FLRA's bargaining order.

However, I cannot join in Section III of the opinion which discusses alternative grounds for reversing the FLRA, namely the budgetary rights issue under § 7106(a)(1) of the Civil Service Reform Act and the possible conflict between the union's salary proposal and § 161(d) of the Atomic Energy Act. My decision to not join in this portion of the opinion in no way reflects my views on the merits of these issues. Rather, because our determination that matters are nonnegotiable conclusively resolves the dispute in this case, I see no need to reach these other issues.

PHILLIPS, Circuit Judge, dissenting:

For reasons sufficiently given in the superseded panel opinion, 859 F.2d 302, and in the decisions in accord of the Second Circuit in *West Point Elementary School Teachers Ass'n v. FLRA,* 855 F.2d 936 (2d Cir.1988), and the Eleventh Circuit in *Fort Stewart Schools v. FLRA,* 860 F.2d 396 (11th Cir.1988), I respectfully dissent and would enforce the FLRA's bargaining order.

ERVIN, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges, have asked to be shown as joining in this dissent.